UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JERMAR D. WILLIAMS,

     Plaintiff,

v.                                  Case No. 3:24cv355-LC-HTC

M. GONZALEZ, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Jermar D. Williams, a prisoner proceeding *pro se* and *in forma pauperis*, filed a civil rights action under 42 U.S.C. § 1983 relating to a use of force that occurred on April 30, 2024. Doc. 1. Defendants have filed a motion to dismiss, arguing: (1) the claims against Defendants Bishop and Streit are unexhausted; (2) Defendants are entitled to sovereign immunity for Williams' state law negligence claims; (3) Williams is not entitled to declaratory relief; and (4) Williams' request for punitive damages is barred by 18 U.S.C. § 3626. Doc. 37. After considering the motion, Williams' response (Doc. 42), and the relevant law, the undersigned concludes Defendants' motion should be GRANTED IN PART and DENIED IN PART. Specifically, the undersigned agrees with Defendants' first three arguments but concludes Williams' may seek punitive damages. Thus, this case should proceed only on Williams' excessive force and battery claims against Defendant Gonzalez.

## I.    Background

Williams names three prison officials at Santa Rosa Correctional Institution ("Santa Rosa CI") as Defendants—Sergeant M. Gonzalez, Sergeant Bishop, and Officer Streit.[1] His complaint contains the following factual allegations, which are accepted as true for purposes of this Report and Recommendation.

On April 30, 2024, Williams was being escorted back to his cell in restraints when Gonzalez, without provocation, began punching him in the face. Williams fell to the ground, and Bishop started "pounding" the left side of Williams' face on the concrete floor. Streit was present during Gonzalez's and Bishop's use of force but failed to intervene. After the use of force ended, the three officers moved Williams into his cell.

That same day, Gonzalez wrote Williams a false disciplinary report ("DR") for attempted battery, claiming he used reactionary force when Williams attempted to spit on him. Williams believes Bishop and Streit submitted false documents in support of the DR. As a result of the DR, Williams spent 90 days in confinement.

## II.    Williams failed to exhaust his claims against Bishop and Streit

Defendants first argue Williams' claims against Bishop and Streit must be dismissed because he failed to exhaust his administrative remedies. They argue the

---

[1] The complaint also named a fourth Defendant, Nurse Musgrove, but Williams abandoned his claim against Musgrove. *See* Docs. 25 & 27.

claims are unexhausted because the grievance Williams filed regarding the April 30, 2024 incident only accused Gonzalez of using excessive force and did not reference any other individual participating in, or being present for, the use of force.  The undersigned agrees.

### A.    Legal Standard

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Exhaustion of all available administrative remedies is a mandatory precondition to suit.  *See Booth v. Churner*, 532 U.S. 731, 739 (2001).  The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The requirement is not subject to waiver by a court, or futility or inadequacy exceptions. *See Booth*, 532 U.S. at 741 n.6; *see also Johnson v. Meadows*, 418 F.3d 1152, 1155 (11th Cir. 2005) (The PLRA "entirely eliminates judicial discretion and instead mandates strict exhaustion, 'irrespective of the forms of relief sought and offered through administrative avenues.'") (citation omitted).  Moreover, the PLRA

requires "proper exhaustion" so that the agency has an opportunity to address the issues on the merits. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006).

An exhaustion defense under the PLRA is treated as a matter in abatement, which means procedurally the defense is treated like one for lack of jurisdiction, although it is not a jurisdictional matter. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (quotation marks and citations omitted). "As a result, deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Id.* "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*. (citing *Bryant v. Rich*, 530 F.3d 1368, 1373-74 (11th Cir. 2008)).

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* (citing *Bryant*, 530 F.3d at 1373-74, 1376). "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083. "The defendants bear the burden of proving that the plaintiff has failed to exhaust his

available administrative remedies." *Id*. at 1082 (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

The grievance procedures promulgated by the Florida Department of Corrections ("FDOC") generally require an inmate to complete three steps. First, the inmate must file an informal grievance with a designated prison staff member. Second, the inmate must file a formal grievance with the warden's office. Third, the inmate must submit an appeal to the Office of the Secretary. *See* Fla. Admin. Code r. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010). However, the approval of a grievance at any level is generally sufficient to exhaust the issues raised in the grievance. *See Williams v. Dep't of Corr.*, 678 F. App'x 877, 881 (11th Cir. 2017) (approval of grievance satisfies the PLRA's exhaustion requirement).

**B.    The Court may consider extrinsic evidence when considering a motion to dismiss based on a failure to exhaust administrative remedies**

To support their motion to dismiss, Defendants submitted: (1) a copy of Williams' grievance regarding the April 30, 2024 incident; (2) logs of the grievances Williams filed between April 30, 2024, and July 26, 2024; and (3) declarations from three FDOC officials responsible for handling inmate grievances. *See* Docs. 37-1 – 37-3. Williams argues the Court should not consider this "'extrinsic evidence' since

a motion to dismiss is supposed to consider only the adequacy of the complaint."

Doc. 42 at 1.

However, Williams is incorrect.  When a court considers a motion to dismiss

based on an inmate's failure to exhaust his administrative remedies, the issue is

treated as a matter in abatement and the court may consider evidence outside the four

corners of the complaint.  *See Bryant*, 530 F.3d at 1376 ("Where exhaustion—like

jurisdiction, venue, and service of process—is treated as a matter in abatement and

not an adjudication on the merits, it is proper for a judge to consider facts outside of

the pleadings and to resolve factual disputes so long as the factual disputes do not

decide the merits and the parties have sufficient opportunity to develop a record.")

(citations omitted).

### C.    Williams May 6, 2024 grievance was not sufficient to put the FDOC on notice of the claims raised against Defendants Bishop and Streit[2]

Williams filed a grievance about the April 30 incident on May 6, 2024.  That

grievance stated:

> At approx. 945 am on April 30, 2024 inmate Williams was walking
> back to his room, F1113, after awaiting DR court locked in the shower.
> On the way back to the room, … Sgt. Gonzalez punched inmate
> Williams brutally in the face numerous times violating Chapter 33.602
> and his civil rights, 8th Amendment U.S.C.  There was no need for this
> type of excessive force … as inmate Williams was handcuffed behind
> his back and shackled at the ankles.  The brutal attack was unprovoked,

---

[2] The parties do not dispute that Williams' grievance was sufficient to exhaust his claims against
Defendant Gonzalez.

unprofessional and downright illegal.  Please hold all audio and video
records for the date and time of the aforementioned brutal attack.

Doc. 37-1 at 6.  The response to the grievance indicated the incident was under

review by the Office of the Inspector General and the grievance was approved.  Doc.

37-1 at 5.

Because the May 6 grievance makes no mention of Bishop or Streit, or the

conduct Williams accuses them of in this action, Defendants argue the claims against

Bishop and Streit are unexhausted.  In response, Williams claims he did not include

the names of Bishop or Streit in the grievance because he did not know their names

and did not think he could obtain their names before the 20-day deadline to file a

grievance expired.[3]  Doc. 42 at 2.

Neither the PLRA nor the FDOC's rules impose a "name all defendants"

requirement for grievances.  *See Jones*, 549 U.S. at 217 ("nothing in the [PLRA]

imposes a 'name all defendants' requirement"); *Harvard v. Inch*, 411 F. Supp. 3d

1220, 1244 (N.D. Fla. 2019) (noting the FDOC's rules require grievances to address

only one issue or complaint and include accurate factual allegations, but otherwise

mandate no level of detail).  Nevertheless, a grievance must include *some*

information about an inmate's complaint; thus, "[i]n circumstances when the

prison's grievance procedure is silent about the level of factual specificity required,

---

[3] The undersigned notes Williams filed his grievance on May 6, only six days after the April 30
use of force.

'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" *Harvard*, 411 F. Supp. 3d at 1244 (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)).

Here, Williams' May 6 grievance did not simply omit the names of Defendants Bishop and Streit. Instead, the grievance failed to indicate any person other than Defendant Gonzalez had engaged in misconduct; it did not allege another person had participated in the use of force and did not allege a person stood by and watched the use of force without intervening. *See Arias v. Perez*, 758 F. App'x 878, 880 (11th Cir. 2019) ("A prisoner must exhaust each claim that he seeks to present in court.") (citation omitted).

Furthermore, Williams does not explain why he could not have described the two officers' misconduct in his May 6 grievance, even if he did not know their names at the time. Instead, Williams argues that because Bishop and Streit would appear on audio and video records, which he requested in his grievance to be preserved, he was not required to name them in the grievance. However, this argument has no merit. Williams was required to use the grievance process to alert officials to the nature of his claims. An inmate cannot exhaust his claims by making a non-specific reference to audio or video records because: (1) FDOC rules detail what the grievance process entails and review of video evidence is not part of that process; and (2) even if officials reviewed video evidence, it would not necessarily be clear

what an inmate believed was objectionable in a video (in other words, officials would be forced to speculate about the issues the inmate wanted addressed).

Because the May 6 grievance did not include *any* description of Defendants Bishop and Streit's misconduct, it was not sufficient to put prison officials on notice of the claims against them. *See Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) ("In order to exhaust … inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures."); *Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004) (the purpose of administrative exhaustion "is to put the [administrative authority] on notice of all issues in contention and to allow the [authority] an opportunity to investigate those issues") (quoting *Griffin v. Carlin*, 755 F.2d 1516, 1531 (11th Cir. 1985)) (alterations in original).  Thus, Williams' claims against Bishop and Streit should be dismissed. *See Jamison v. Rich*, 2006 WL 197196 (S.D. Ga. Jan. 23, 2006) (concluding grievances which only alleged an assault by one defendant and did not allege "other individuals may have been responsible for this alleged assault" were not sufficient to exhaust claims against two other defendants for condoning the assault or exhibiting deliberate indifference).

### III. Williams cannot state a claim for negligence against based on the fabrication of the documents related to the DR

With a dismissal of the claims against Bishop and Streit, the only remaining claims are those against Gonzalez for excessive force, battery, and negligence.

Although Williams vaguely claims in his response to the motion to dismiss that Defendants breached their duty to keep him safe, Doc. 42 at 4, it is clear based on the allegations in the complaint that Williams' negligence claim is related to the DR he received and not the use of force.[4]

Gonzalez, however, is immune under Fla. Stat. § 768.28(9)(a) for claims arising out of his negligence. Under Florida law, an officer cannot be held liable for acts committed within the scope of his employment unless he "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). Williams does not address this immunity argument in his response to the motion to dismiss and, thus, he does not argue his negligence claim meets any of the exceptions to § 768.28 immunity.

Based on the foregoing, Williams has not established Gonzalez can be sued for negligence under § 768.28. Thus, the negligence claim against Gonzalez should

---

[4] It is not clear whether an inmate can even maintain a negligence claim based on allegations that an official filed a false DR, particularly when the inmate is found guilty of the DR after being afforded due process. *See Alvarez-Mena v. Miami-Dade Cnty.*, 305 So. 3d 63, 69-70 (Fla. 3d DCA 2019) (finding negligence claim could not be brought against detectives for filing false police reports where the reports led to the plaintiffs' prosecution); *see also Hall v. Merola*, 67 F.4th 1282, 1293-94 (11th Cir. 2023) (noting if inmate's "claim is that the guards fabricated a sprinkler-system charge to justify their use of gas on him, then his claim would seem to be most analogous to a malicious-prosecution claim because the wrong would be about the alleged misuse of the prison disciplinary system" but asserting such a retaliation claim would be barred since inmate was found guilty of the charge).

be dismissed with prejudice.[5]  *See Gurrera v. Palm Beach Cnty. Sheriff's Office*, 657 F. App'x 886, 892 (11th Cir. 2016) ("To the extent Plaintiff's allegations establish Defendants' negligence, Defendants are still entitled to immunity because negligence alone falls short of actual malice."); *Irwin v. Signal Safe, Inc.*, 382 So. 3d 766, 771 (Fla. 3d DCA 2024) ("The net effect of [Fla. Stat. §§ 768.28(1) and 768.28(9)(a)] is to insulate state employees from personal liability for torts committed within the scope of employment, absent the required scienter findings, while simultaneously allowing recourse against the State.").

## IV.    Williams is not entitled to a declaratory judgment

Williams' complaint seeks a declaratory judgment indicating the Defendants' actions on April 30, 2024, violated his constitutional rights.  Doc. 1 at 10.  However, a declaratory judgment is not available to adjudicate the legality of past conduct. *See Regency of Palm Beach, Inc. v. QBE Ins. Corp.*, 2009 WL 2729954, at *4 (S.D.

---

[5]  Williams' allegations regarding receiving a false disciplinary report also fail to state a constitutional claim, as an allegation that he spent 90 days in disciplinary confinement is not sufficient to show he experienced the atypical and significant hardship necessary to implicate a liberty interest protected by the Due Process Clause.  *See Sandin v. Conner*, 515 U.S. 472, 483-84 (1995) (recognizing "States may under certain circumstances create liberty interests which are protected by the Due Process Clause[,] … [b]ut these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"); *Sealey v. Giltner*, 197 F.3d 578 (2d Cir. 1999) (finding 101-day confinement in special housing unit did not impair a protected liberty interest); *Foreman v. Jackson*, 2022 WL 2813750, at *3 (M.D. Ala. June 24, 2022) ("[T]here is no due process right to be free from disciplinary segregation/confinement based on a false or incorrect disciplinary report.") (citation omitted); *but see Williams v. Fountain*, 77 F.3d 372, 374 n.3 (11th Cir. 1996) (assuming full year of solitary confinement is atypical).

Fla. Aug. 25, 2009) ("The point of a declaratory judgment is to permit 'actual controversies to be settled before they ripen into violations of law,' not to adjudicate past conduct.") (citation omitted); *see also Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1348 (11th Cir. 1999) ("Injury in the past … does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment.") (citation omitted).  Thus, Williams request for a declaratory judgment should be dismissed and the only relief he can seek is damages.[6]

## V.    Defendants have not established Williams is precluded from seeking punitive damages

Defendants next argue Williams' request for punitive damages is barred by the PLRA, which states:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs.  The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.  The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A).  Punitive damages are included within the definition of "prospective relief" used in the statute.  *See Johnson v. Breeden*, 280 F.3d 1308, 1325

---

[6] The Court previously found Williams could not obtain a declaratory judgment.  Doc. 10 at 4.  For the sake of clarity, the undersigned will recommend dismissal of the request for declaratory relief.

(11th Cir. 2002), *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389, 395 (2015).

Nonetheless, Defendants claim punitive damages categorically cannot satisfy the requirements of 18 U.S.C. § 3626(a)(1)(A) because: (1) "'correction' of a violation [of a federal right] accomplished through compensatory damages and punitive damages are, by their nature, never corrective"; (2) punitive damages cannot be "narrowly drawn"; and (3) punitive damages cannot "extend no further than necessary" or be the "least intrusive means" to correct the violation of a federal right. Doc. 37 at 12-13. However, Defendants cite no cases that hold § 3626 prohibits the assessment of punitive damages in prison conditions cases. And the Eleventh Circuit case they do cite, *Johnson*, indicates punitive damages are permitted in prison conditions cases.[7] 280 F.3d at 1325 (finding § 3626's "requirements mean that a punitive damages award must be no larger than reasonably necessary to deter the kind of violations of the federal right that occurred in the case" and "that such awards should be imposed against no more defendants than necessary to serve that deterrent function and that they are the least intrusive way of doing so"). Thus, the current state of the law does not support the conclusion

---

[7] The undersigned recognizes the argument Defendants make here regarding § 3626 was not made to the Eleventh Circuit in *Johnson* and has never been squarely addressed by the circuit court. *See Hoever v. Marks*, 993 F.3d 1353, 1364 n.5 (11th Cir. 2021) ("We decline the government's invitation to address the availability of punitive damages in prison condition cases under 18 U.S.C. § 3626, as it falls outside the scope of the en banc briefing question posed to the parties.").

that § 3626 imposes a categorical prohibition on an award of punitive damages. *See*

*Hoever v. Marks*, 993 F.3d 1353, 1364 (11th Cir. 2021) (holding "that § 1997e(e)

permits claims for punitive damages without a physical injury requirement"); *Benton*

*v. Rousseau*, 940 F. Supp. 2d 1370, 1379-80 (M.D. Fla. 2013) (finding prisoner was

entitled to $15,000 in punitive damages for violations of his First and Fourteenth

Amendment rights).

Moreover, as several judges in this District have determined, whether punitive

damages might be available to a § 1983 prisoner plaintiff need not be decided on a

motion to dismiss. *See, e.g., Brazill v. Jones*, No. 5:21cv99-TKW-MJF, 2024 WL

1723555, at *10 (N.D. Fla. Apr. 1, 2024), *report and recommendation adopted*, 2024

WL 1717392 (N.D. Fla. Apr. 22, 2024); *Hallam v. Gilbert*, No. 3:23cv7681-LAC-

ZCB, 2024 WL 872288, at *3-4 (N.D. Fla. Feb. 13, 2024), *report and*

*recommendation adopted*, 2024 WL 867067 (N.D. Fla. Feb. 29, 2024); *Baker v.*

*Rathel*, No. 1:23cv3-AW-MJF, 2023 WL 7496224, at *4-5 (N.D. Fla. Oct. 5, 2023),

*report and recommendation adopted*, 2023 WL 7497491 (N.D. Fla. Nov. 13, 2023);

*see also Vaughn v. Cambria Cnty. Prison*, 709 F. App'x 152, 155 n.2 (3d Cir.

2017). Accordingly, Defendants' motion to dismiss Williams' request for punitive

damages should be denied.

## VI.    Conclusion

For the reasons discussed above, Williams' claims against Bishop and Streit should be dismissed for failure to exhaust because Williams wholly failed to identify those Defendants by name or description or reference their conduct in the only grievance he filed related to the use of force incident. Williams' negligence claim against Gonzalez should be dismissed because Gonzalez is immune from liability under Fla. Stat. § 768.28. Williams is also not entitled to declaratory relief for past conduct. Finally, while Williams may ultimately not be able to prove that he is entitled to any damages, dismissing the punitive damages claim is premature.

Accordingly, it is RECOMMENDED:

1.    That Defendants' motion to dismiss (Doc. 37) be GRANTED IN PART and DENIED IN PART as set forth below.

2.    That Williams' claims against Bishop and Streit be DISMISSED WITHOUT PREJUDICE due to Williams' failure to exhaust his administrative remedies, and the clerk be directed to terminate those Defendants.

3.    That Williams' negligence claim against Gonzalez be DISMISSED WITH PREJUDICE under Fla. Stat. § 768.28.

4.    That Williams' request for a declaratory judgment be DISMISSED.

5.    That Defendants' motion to dismiss Williams' request for punitive damages be DENIED.

6.    That this case be referred to the undersigned for further proceedings on Williams' excessive force and battery claims against Gonzalez.

At Pensacola, Florida, this 20ᵗʰ day of February, 2025.

*/s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1.